704 F.2d 728
 UNITED STATES of America, Appellant,
v.
2.33 ACRES OF LAND, MORE OR LESS, SITUATE IN WAKE COUNTY,
STATE OF NORTH CAROLINA, and William W. Holding,
III; Elizabeth H. Holding; Walter H.
Holding; Carolyn V. Holding;
Appellees.
 No. 82-1266.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1982.
Decided April 11, 1983.
 
 Blake Andrew Watson, Atty., Appellate Section, Land & Nat'l Resources Div., U.S. Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Samuel T. Currin, U.S. Atty., Dennis I. Moore, Asst. U.S. Atty., Dirk Snel, J. William Boone, Dept. of Justice, Washington, D.C., on brief), for appellant.
 Howard E. Manning (Manning, Fulton & Skinner, Ellis Nassif, Raleigh, N.C., on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and HALL, Circuit Judges.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The government appeals from an order of the district court awarding damages as recommended by commissioners, appointed pursuant to Rule 71A(b), F.R.Civ.P., in a land condemnation case. The case involved a partial taking and the commissioners awarded damages for the land and improvements taken by a "before and after" method of valuation and severance damages for injury to the land and improvements not taken. The thrust of the government's appeal is that the landowner was awarded double compensation at least in part and thus was overcompensated.
 
 
 2
 We agree that the landowner did receive at least some excess compensation. Because the record is not sufficient for us to determine the exact aggregate amount of overcompensation, we vacate the judgment and remand the case to the district court for recomputation of the award in accordance with the principles set forth herein.
 
 I.
 
 3
 The government's complaint in condemnation, together with a declaration of taking, sought to acquire 2.33 acres of a larger parcel of 25.29 acres for the Falls Lake Project in Wake County, North Carolina. The 2.33 acres was part of a four-acre plant site used at the date of taking as a bonded warehouse for the storage of baled cotton. On the four-acre site which was enclosed by a seven-foot-high chain-link fence, there were numerous storage warehouse buildings; adequate access and turning areas for fifty-five foot tractor-trailer rigs; and an extensive fire prevention sprinkler system consisting of pumps, pump houses, piping and water storage tanks connected by pipes to an outlet on the nearby Neuse River. Outside of the site was a 72,000-gallon open-water storage tank used in conjunction with the sprinkler system.
 
 
 4
 Within the 2.33-acre taken area, were two buildings, one used for equipment storage and the other for a clubhouse; 1,200 square feet of paved access road running from a public highway to the two buildings and including some of the turning area for access to other buildings not taken; a 250,000-gallon water supply reservoir; a pump house with electric pumps; a gate and chain-link fencing; and, underground piping to the river and to the sprinkler system.
 
 
 5
 The evidence showed that the taking of the 2.33-acre tract destroyed the utility of the remainder of the four-acre site for the purpose for which it was then used, unless facilities in substitution for those on the 2.33-acre tract which were taken were built on the remainder or on adjacent land. Although the evidence was conflicting as to the highest and best use of the remaining 1.63-acre tract, the extent of severance damage to it and the value of both the property taken and that remaining, these issues were all resolved by the commissioners and their resolution is not contested on appeal except for possible duplication in recovery. The commissioners recommended a total award of $202,500.00, and the basis of their award is best shown by quoting from their report:
 
 Fair Market Value
 The Commissioners find:
 
 6
 1. That the fair market value of the entire tract immediately before the taking was:
 
 
 7
 Land: Plant site area which includes most of the
 
 
 8
 ----
 level land, 4 acres at $4000 an acre 16,000.00
 Remaining 21.59 acres at $3000 an acre 64,770.00
 -----------
 $80,770.00
Improvements:
------------
 Building #9 701.00
 Building #10 2,213.00
 Other buildings 125,587.00
 Other improvements
 Fence and gate 15,397.00
 Asphalt paving 3,087.00
 Pump house 309.00
 Fire hose building 156.00
 Sprinkler system, pipes,
 nozzles, connections and
 controls 28,875.00
 Electric pump and controller 19,425.00
 250,000 gallon storage pool 17,850.00
 Miscellaneous 2,500.00 216,100.00
 --------------- -----------
 Total Value $296,870.00
 
 
 9
 2. The fair market value of the severed area immediately after the taking was:
 
 
 10
 Land: 1.67 acres remaining of the plant site area
----
 at $4000 an acre 6,680.00
 Remaining 21.59 acres at $3000 an acre 64,770.00
 -----------
 $71,450.00
Improvements:
------------
 Remaining buildings 125,587.00
 Fence 9,361.00
 Paving 2,734.00
 Fire hose building 156.00
 Sprinkler system, pipes,
 nozzles, connections and
 controls 28,875.00
 Miscellaneous improvements 2,500.00 169,213.00
 ----------------- -----------
 Total Value $240,663.00
 
 
 11
 3. The fair market value of the taken area, at the time of taking, is the difference between 1 and 2, being $56,207.00
 
 
 12
 4. The Commissioners find severance damages as follows:
 
 
 13
 Cost of replacing access road and
paving 25,000.00
Cost of replacing fire protection
reservoir 50,000.00
Cost of new water supply from Neuse
River 25,000.00
Cost of new pump house, pumps,
valves and controls 25,000.00
Cost of relocating water lines 10,000.00
Cost of improvements to lower
turning area 5,000.00
Cost of replacing fencing and gate 6,000.00
 -----------
Total $146,000.00
 
 Award of Commissioners
 
 14
 From the foregoing findings, the Commissioners hereby award the owners, as compensation for the fee simple interest condemned by the Government herein, the sum of $56,207.00, being its fair market value at the time of taking, May 25, 1978, and severance damages to the remainder in the sum of $146,000.00, being a total of $202,207, rounded to $202,500.00, which is the total amount of this award.
 
 II.
 
 15
 The commissioners purported to use a before and after method of valuation; and, as the government argues, if this method is properly employed when there is a partial taking, severance damages should not be allowed. This is so because if the fair market value of the property after the taking is subtracted from its fair market value before the taking, presumably the fair market value after the taking would reflect any diminution in value by reason of the taking so that a separate allowance for severance damages is unnecessary in order for the landowner to recover just compensation. United States v. 38.60 Acres in Henry County, Missouri, 625 F.2d 196, 201 (8 Cir.1980). See also, United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943); United States v. 91.90 Acres of Land, 586 F.2d 79, 86 (8 Cir.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); United States v. 97.19 Acres of Land, More or Less, 582 F.2d 878, 880 (4 Cir.1978).
 
 
 16
 However, the items labeled "severance damages" in paragraph four of the award present, in fact, the payment to the landowner of the cost of replacing taken improvements which are necessary to the maintenance of the continued value of the plant left on the remainder. This award is proper for the commissioners found it was less expensive to the government to pay that cost than to pay the landowner for the value of the improvements left on the remainder which would otherwise be rendered worthless. When the cost of curing the injury to the remainder is less than the outright diminution in its value uncured, the government may pay the cost of cure. United States v. Dickinson, 152 F.2d 865, 870 (4 Cir.1946), aff'd 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). See 4A Nichols on Eminent Domain, Sec. 1404. But, once the government pays the cost of replacing a particular improvement, it should not also have to pay the value of the taken improvement which is replaced. That would be double compensation for the landowner would be given both a surrogate for the taken improvement and its fair market value. Therein lies the commissioners' error, for it is apparent that on several items for which the replacement cost was paid in paragraph four, the landowner was also paid the fair market value of the original by the computations contained in paragraphs one and two.
 
 
 17
 We perceive, for example, that the landowner here received double compensation for at least the items of "fencing and gate" and the "250,000 gallon storage pool." The record suggests that there may have been double compensation for other items. With regard to "fencing and gate," it will be seen that they were valued at $15,397.00 before taking and $9,361.00 after taking. Thus by the "before and after" method of the commissioners, the landowner was awarded $6,036.00 for the taking. But the landowner was also awarded $6,000.00 as the "Cost of replacing fencing and gate." Thus, the landowner was overcompensated in the amount of $6,000.00 for this item.
 
 
 18
 Similarly, with regard to the "250,000 gallon storage pool," it was valued at $17,850.00 before the taking. Since it was taken in its entirety, there was no value after taking and the landowner was awarded the full $17,850.00 by the commissioners' method of determining just compensation. But the commissioners also awarded the sum of $50,000.00 for "Cost of replacing fire protection reservoir" and the commissioners' report establishes the replacement fire protection reservoir was the surrogate of the 250,000 gallon storage pool. Again the conclusion that the landowner was overcompensated to the extent of $17,850.00 ineluctably follows.
 
 
 19
 We think that there may be other duplications in the award. On the present record it is difficult to be certain because the appellations used to describe items of property listed in paragraphs 1, 2 and 4 of the commissioners' report are not comparable and yet the narrative section of the report suggest that some items in paragraph 4, other than the two we have identified, may well be analogues of some of the items described in paragraph 1 which were actually taken.
 
 
 20
 It is necessary therefore that we return this case to the district court for further proceedings, including the taking of additional evidence if the district court deems it necessary, to the end that duplications in just compensation are eliminated. The principle which should guide the district court in recomputing the award is that the landowner should be compensated for the value of land taken, plus the cost of replacing improvements taken necessary to the continued value of the remainder, plus the value of any improvements taken which need not be replaced.
 
 
 21
 VACATED AND REMANDED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 22
 I cannot agree with the majority's conclusion that the damages awarded by the Commissioners have in any way overcompensated the landowners. Because I believe that the approach taken by the majority in this case has the result of seriously undercompensating the landowners for their loss, I must dissent.
 
 
 23
 In calculating the award, the Commissioners first determined the fair market value of the entire 25.59-acre tract before the taking to be $296,870.00. This included the value of all of the land and the improvements thereon. They then determined the value of the land and improvements which would remain after the taking to be $240,663.00. By subtracting the second figure from the first, the Commissioners concluded that the fair market value of the taken area was $56,207.00. Next, the Commissioners calculated severance damages of $146,000.00. This amount included the costs of replacing and relocating all of the improvements located within the taken area in order to make the residue functional in the landowners' warehousing business. Consequently, by adding the fair market value of the taken area plus the severance damages and rounding up, the Commissioners reached their final award of $202,500.00.
 
 
 24
 In my view, this award, including the separate award for severance damages, was entirely proper and in no way includes double damages. It is well-established that there are two methods for determining just compensation in any case of a partial taking. The first is to determine the value of the entire property before the taking and subtract the value of the remaining property after taking. When this method is used, the amount by which the remaining property or residue is damaged by the taking is an additional factor considered in determining the diminution in value of the remaining property. Thus, the difference between the before and after figures automatically includes severance damages and it is unnecessary to make a separate award for these damages. See United States v. 91.90 Acres of Land, 586 F.2d 79, 81 (8th Cir.1978).
 
 
 25
 Under the second approach, the intrinsic value of the property actually condemned is first calculated to determine how much the condemnor must pay for that which is physically taken. That figure, however, does not include any amount for damage or injury to the residue which necessarily results from the taking. Thus, over and above the value of the condemned property, the landowner is entitled to separate severance damages in order to be compensated for the diminution in value of the property with which he is left. West Virginia Pulp & Paper Co. v. United States, 200 F.2d 100, 102 (4th Cir.1952). Although the two methods differ, it is important to note that, in any given case, if both methods are applied correctly, they will yield the same result.
 
 
 26
 In the instant case, although the Commissioners used a "before and after" method to compute the value of the property actually taken, it is clear that they applied the second method of calculating just compensation and, therefore, contrary to the majority's conclusion, their separate determination and award of severance damages was proper. The Commissioners subtracted the value of the land and improvements immediately after the taking from the value of the entire tract before the taking to determine the value of the property taken. However, in computing the value of the residue, the Commissioners did not include any diminution in the value of the remaining improvements or in the value of the landowners' warehousing operation that resulted from the government's taking. This is evidenced by the fact that in listing the "after-taking" values of those improvements that were not to be taken either in whole or in part, such as the "Remaining buildings," the "Fire hose building," and the "Sprinkler system, pipes, nozzles, connections and controls," the Commissioners simply carried down the same values that they had assigned to these improvements "before the taking." Since the Commissioners had found that the improvements which were to be removed were essential to the warehousing operation, those improvements which were physically unaffected by the condemnation could only have the same value after the taking if the taken improvements were replaced. Otherwise, the improvements which remained would be worth much less because, in the absence of the taken improvements, they could no longer be employed in the landowners' warehousing operation. Consequently, it is clear that the after-taking value of $240,663.00, which the Commissioners assigned to the residue, represents the value of the remaining land and improvements only after the taken improvements are replaced. Therefore, in my view the Commissioners were correct in awarding an additional amount of $146,000.00 (the severance damages) in order to enable the landowners to replace the taken improvements.
 
 
 27
 The majority, on the other hand, concludes that the landowners received excess compensation at least in the amount of $6,000.00 for the "fencing and gate" and $17,850.00 for the "250,000 gallon storage pool." The majority further suggests that there may be other items for which the landowners received overcompensation. I am filled with a sense of frustration because of my inability to make my brothers of the majority understand what is so clear to me. To carry the majority reasoning to its logical conclusion would lead to ridiculous results. For example, suppose there was no need to replace the fence. Would the landowner get nothing for the $6,000.00 worth of fence taken? Or, suppose a replacement of the storage pool had cost only $5,000.00. Would $12,850.00 have been deducted from the amount awarded for the taking of the old storage pool?
 
 
 28
 There is no question but that the landowners will have to pay $146,000.00 before their remaining property can be used. Anything subtracted from that amount will in effect be deducted from the $56,000.00 they were supposed to have received for the land and improvements taken. Logically all of the $146,000.00 in severance damages could be disallowed, in which case the landowners would end up with a net loss of $89,793 as a result of this taking. That would hardly place the landowners in the same pecuniary position occupied before the property was taken, a position to which they are clearly entitled. United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943).
 
 
 29
 Finally, as the district court judge noted below, simple mathematics reveals that there was no double-counting in the condemnation award.
 
 
 30
 That the Commissioners did not undertake to award severance damages for improvements for which the landowners had already been compensated is further illustrated by the fact that the fair market value of the severed area immediately after the taking, $240,663.00, plus the amount of the award, $202,500.00, total $443,163.00, less the amount of severance damages awarded, $146,000.00, gives a total of $297,163.00 which is within $300.00 of the fair market value of the entire tract immediately before the taking which was $296,870.00.
 
 
 31
 United States v. 2.33 Acres of Land, No. 78-247-Civ-5 (E.D.N.C. Nov. 6, 1981). In other words, given the total award of $202,500.00, after the landowners spend $146,000.00 to replace the taken improvements, they will be left with $297,163.00 in cash and property, which is almost exactly the value of the property they held before the taking. Consequently, as the district court found, "it is obvious that the Commissioners did not undertake to compensate the landowners twice for any of the improvements which were the subject of severance damages." Id. I agree with the conclusion reached by the district court and would, accordingly, affirm its order, awarding damages to the landowner in the amount of $202,500.00.