**UNITED STATES of America, Plaintiff,**

v.

**1735 NORTH LYNN STREET, SITUATED IN ROSSLYN, ARLINGTON COUNTY, COMMONWEALTH OF VIRGINIA and Plaza West Associates, Defendants.**

Civ. A. No. 87–0484–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 23, 1987.

Dennis Szybala, Asst. U.S. Atty., Alexandria, Va., Virginia Butler, Dept. of Justice, Land & Natural Resources Div. Land Acquisition Section, Washington, D.C., for plaintiff.

Jane Juliano, Dunnells, Duvall, Bennett & Porter, Washington, D.C., Frank W. Stearns, Wilkes, Artis, Hedrick & Lane, Fairfax, Va., Stanley J. Fineman, Wilkes, Artis, Hedrick & Lane, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

The disputed valuation issues in this condemnation grow out of the United States' taking of a leasehold interest in the Plaza West's office building. The difficulties arise because the taking is partial, temporally and spatially. The government is condemning only one-half of the building's office space for a period of less than two years. As it happens, this taking comes at an inopportune time for the owner, who, having recently purchased the building, planned extensive renovations to make the building more attractive to potential tenants. The government's taking, the owner claims, frustrates these plans and renders it difficult, if not impossible, to rent the remainder of the building. The disputed valuation issues stem from these facts. They must be resolved so that the Commissioners, appointed pursuant to Rule 71A(h), can be fully and fairly instructed in the applicable law.

### Facts [1]

The government's condemnation of part of the office space in defendant's building at 1735 North Lynn Street, Arlington, is the latest event in the government's long association with the building. For a number of years prior to this taking, the government had leased the entire building with the exception of some limited commercial space. The latest lease between the General Services Administration (GSA) and the former owner expired on September 30, 1986. Prior to this date, the government vacated approximately one-half of the building, but chose to remain in the other half even beyond September 30, relying on the lease's holdover provision. Under this provision, the government was entitled to holdover for ninety days at some negotiated rate. No rate was ever negotiated. The government simply paid the old lease rate for the space occupied during the holdover period, which expired December 29, 1986.

Contemporaneous with these events, Plaza West Associates entered into negotiations to purchase the building. Those negotiations bore fruit; a contract was signed on December 4, 1986, and the deed transferring title is dated December 24, 1986.

The government continued to occupy approximately one-half of the building's office space beyond the expiration of the holdover period. Negotiations between GSA and Plaza West ensued. Ultimately, GSA filed a declaration of taking on May 14, 1987, condemning the right to use and occupy those portions of the building then

---

**1.** The operative facts in this case will be found by the Commissioners based on the evidence the parties present. Pursuant to Rules 71A(h) and 53(d)(2), Fed.R.Civ.P., this court will accept these findings unless clearly erroneous. Thus, the facts stated here are derived from the parties' representations as to what the evidence will be and are used solely as a predicate for resolving the disputed issues.

in use by the government from May 1, 1987, to February 29, 1988. To reflect actual events and obviate another dispute, the parties have stipulated that the taking should be considered as having commenced on December 29, 1986, and scheduled to terminate on February 29, 1988.

It has apparently been Plaza West's consistent plan to renovate the entire building as soon as the government vacated the premises in December 1986, and to complete this renovation before seeking to rent any space in the building. On December 3, 1986, prior to the purchase agreement execution, representatives of GSA and Plaza West met and the former told the latter that the government needed to continue to use portions of the building beyond the holdover period and into 1987. GSA declined to give a date for vacation of the building.

Plaza West contends that the highest and best use of the property is "as a fully renovated first-class office building." Defendant's Objections and Brief on Proposed Commission Instructions, p. 3. It also contends and will seek to prove at trial that the government's partial taking of a leasehold interest in the building renders the remaining, uncondemned portion of the building "virtually useless" and unrentable for the period of the taking. And further, Plaza West also seeks to prove at trial that the government's partial taking precludes proceeding with renovation of even the uncondemned portions of the building.

### Proceedings to Date

Plaza West responded to the May 14, 1987, declaration by filing its Answer and Objections on June 1, 1987. Thereafter, the parties commenced and conducted substantial document and interrogatory discovery. By motion dated June 26, 1987, Plaza West moved for the appointment of a commission pursuant to Rule 71A(h), Fed. R.Civ.P. The government did not oppose the motion. On August 20, 1987, this court appointed three Commissioners. Thereafter, the parties submitted proposed instructions which brought into sharp relief the valuation questions here presented.

In essence, Plaza West contends that full and fair compensation for the taking under the fifth amendment requires that the Commissioners be given instructions on severance damages, compensation for loss of business value and special aspects of temporary takings. The government disagrees. The court considers and resolves these issues and attaches to this opinion a copy of the appropriate instructions to be given to the Commissioners in open court.[2]

### Analysis

#### A. Temporary Taking

The starting point in any analysis of temporary takings must be the seminal decision in *United States v. General Motors*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). That decision and its progeny of the war-time period involved takings of leasehold interests. Exigencies of the times moved the government to adopt a policy of acquiring properties for short periods with options to renew. The result was litigation that required the Supreme Court to consider whether traditional valuation principles were adequate to such partial takings.

In *General Motors*, the government condemned part of a warehouse for a year and ten days with an option to renew. GM occupied the entire warehouse under a twenty year lease which had six years remaining. At trial, GM sought to recover more than rental value; it sought incidental losses incurred in moving out of part of the warehouse. On these facts, the Court saw the issue as follows:

> The question posed in this case then is, shall a different measure of compensation apply where that which is taken is a

---

**2.** Both parties submitted proposed instructions. The valuation disputes addressed here are highlighted by the contrasts and differences in the proposals. As there were other, less significant differences, the court requested the parties to confer and attempt to reach agreement on as many instructions as possible. The parties complied and subsequently filed a Stipulation Regarding Proposed Charge to the Commissioners, dated October 23, 1987. The attached instructions are a revision of the Stipulation revised to reflect the court's rulings.

right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on termination of the Government's use?

*General Motors*, 323 U.S. at 380, 65 S.Ct. at 360.

█ Significant distinctions are immediately apparent. In this case, the building is not "equipped for the condemnee's business" or "filled with his commodities." Still, one of the underlying principles of the decision seems applicable here, namely that the long term rental value may not be the sole measure of the value of a short-term taking. On this point, the Court stated:

The value of such [short-term taking of] an occupancy is to be ascertained, not by treating what is taken as an empty warehouse to be leased for the long term, but what would be the market rental value of such a building on a lease by the long-term tenant to the temporary occupier.

*General Motors*, 323 U.S. at 382, 65 S.Ct. at 361. The Court went on to say that the long-term rental value might be considered in estimating the market rental value of the partial taking, but that other factors might also be considered as evidence of value, not as elements of damage. Specifically, the Court mentioned the reasonable cost of moving General Motors' materials out, and storing them elsewhere. While such factors are not pertinent here, the principle is; namely, that factors beyond the long-term rental value may be relevant not as elements of incidental damage, but as factors that might "certainly and directly affect the market price agreed upon." 323 U.S. at 383, 65 S.Ct. at 361.

█ Accordingly, the court concludes that the Commissioners should be instructed, consistent with *General Motors*, that in setting the fair market value of the temporary taking, they may take into account any factors which would affect the setting of a fair rent between a willing lessor and a willing lessee. Specifically, the court will instruct the Commissioners on this point as follows:

Because this is a taking of a temporary occupancy of a building, you may consider in your determination of the fair market rental value all the elements which certainly and directly affect the market price agreed upon by a willing lessor and a willing lessee, including any extraordinary and unusual circumstances of the lease. Such elements may include for example, any costs to the lessor of providing the temporary rental that would affect the market value. In other words, such costs and similar items are to be considered by you not as independent items of damage, but to aid in the determination of what the market price is that would be asked and paid for such a temporary occupancy of the building.

B. *Compensation for Loss of Business Value*

█ Plaza West cites *Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949), to support its claim for loss of business value. *Kimball* is inapposite and the claim must fail. In *Kimball*, the government acquired the condemnee's laundry plant, which it continued to operate as a laundry for army personnel, indeed even using most of the condemnee's 180 employees. The taking was temporary in nature with the initial term lasting about six months and extended year to year thereafter at the pleasure of the Secretary of War. The property was returned in March 1946. On these facts, the Court ruled that the condemnee was entitled to recover for loss to the laundry's going concern value in addition to the fair market value of the premises. *Id.* at 14, 69 S.Ct. at 1442. The going concern value the Court had in mind was the value of the condemnee's truck pick-up and delivery routes. *Id.* at 8, 14, 69 S.Ct. at 1439, 1442.

Unlike *Kimball*, this case does not involve the government's takeover and subsequent operation of an ongoing business. But this distinction, by itself, may not suffice to dispose of *Kimball*. The Court there acknowledged the line of public utility decisions allowing going concern value where the utility condemned the property with the intention of carrying on the busi-

ness the condemnee had there conducted. These cases, the Court noted, could not be explained by the notion that the condemnor operated the business and received the benefit of the condemnee's going concern value. 338 U.S. at 13, 69 S.Ct. at 1441. In this respect, the Court stated:

> If [an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern value of his business] ... has occurred, the going-concern value of the business is at the Government's disposal whether or not it chooses to avail itself of it.

*Id.* at 13, 69 S.Ct. at 1441 (citations omitted). Even so, however, *Kimball* is inapplicable here for there is simply no business involved, no loss of going concern value. The property involved is an office building and the only business associated with it is the leasing of space. As there is no going concern here in the *Kimball* sense, so also there is no compensable loss of going concern value. Accordingly, the court denies Plaza West's request for an instruction permitting the Commissioners to award compensation for loss of going concern value.

### C. *Severance Damages*

 Severance damages arise when a partial taking damages the residue retained by the condemnee. The propriety of severance damages in appropriate instances is a well-settled principle. A classic Supreme Court statement of this principle appears in *United States v. Grizzard*, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165 (1911):

> Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted.

*Id.* at 183, 31 S.Ct. at 163, *quoted in West Virginia Pulp & Paper Co. v. United States*, 200 F.2d 100, 102 (4th Cir.1952).

The Fourth Circuit in *West Virginia Pulp & Paper Co. v. United States*, 200 F.2d 100 (1952), described severance damages in the following terms:

> In this case, however, the claim for damages arises not from the use of land acquired from others but from damage done to the remainder of a unitary holding from the use made of the part thereof that has been taken. A part of the land acquired and held by the company as a site for plant expansion was taken for use by the government as a place for storing large quantities of highly inflammable and explosive gasoline; and the company was damaged not merely by the loss of the land taken but also by the depreciation that resulted in the value of the remainder of the land by reason of the proposed use. It was entitled to be awarded such sum as would put it in as good position pecuniarily as it would have been in if its property had not been taken.
>
> \* \* \* \* \* \*
>
> "It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court."

*Id.* at 103, 104 (quoting *Sharpe v. United States*, 112 F. 893, 896 (3d Cir.1902), *aff'd*, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903)) (citations omitted).

 Whether the government's taking in this instance is an appropriate occasion for an award of severance damages depends upon the proof adduced. If Plaza West offers competent evidence that the government's taking of approximately one-half of the building's office space diminishes the fair market rental value of the remaining space or indeed renders it entirely unrentable, then severance damages

may be appropriate.[3] By the same token, a taking may conceivably enhance the value of a residue and, if the government can show this, the Commissioners may allow for it. See *United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943) (where taking of a portion of a tract benefits the remainder, the benefit may be set off against the value of land taken).

■ While severance damages may theoretically be available in any partial taking, it is worth considering here whether they are available in the taking of part of an office building. Typically, severance damages arise because there is some physical functional connection between the property taken and the residue, some synergism due to their physical relationship or union. It is not immediately apparent that such a relationship exists or can exist between the government's portion of Plaza West's building and the residue. Perhaps the rental value of some of the remaining floors is diminished unless offered together with one or more of the government's floors. In this connection, Plaza West complains about the crazy quilt nature of the government's holdover. Perhaps the specific rental market in question is weak with respect to single floors or portions of floors, but strong with respect to rentals of two or three floors capable of being connected by a staircase. In this event, perhaps the government's taking of nonconsecutive floors might diminish the rental value of the remainder. In any event, no confident conclusion can be reached at this time as the court does not yet have the benefit of a developed record, including expert testimony.[4]

There is a further potential obstacle to severance damages. The government argues that no severance damages are warranted here because Plaza West knew that the government intended to occupy the premises into 1987. In support, the government cites *United States v. Mattox,* 375 F.2d 461 (4th Cir.1967). This decision may be read to hold that a landowner cannot obtain severance damages based on the unitary use of tracts of land where it is established that the landowner purchased the tracts with knowledge that the integrated use of the fee taken and the residue was if not impossible, at least highly improbable. *Id.* at 464.

In *Mattox,* the condemnee purchased two tracts of land, one of which was timber land and the other a mill site to be used for processing the timber. These tracts were separated by a third tract, which the condemnee leased in order to have a route of access between the timber land and mill site. The government subsequently condemned the mill site, and the condemnee argued that he was due severance damages, given that the potential for integrated use between the timber land and mill tract was frustrated, thus the value of the timberland was diminished. The Fourth Circuit denied these severance damages, noting that:

> [The argument for severance damages] fails to take into consideration the fact that when the defendant purchased the three tracts, the Government project was already well under way. Thus the integrated use of the fee tract and the mill site was if not actually impossible at least highly improbable. It offends our sense of justice that the Government should be required to pay the defendant an alleged damage to his fee tract which, if it occurred at all, occurred before he purchased.

375 F.2d at 463–64. Thus, the government urges that *Mattox* should be read to preclude severance damages where, as it

---

**3.** In this Circuit, it is also acceptable to measure severance damages by determining the difference in the market rental value of the entire building before the taking and the market rental value of the residue after the taking. *See United States v. 97.19 Acres,* 582 F.2d 878, 882–83 (4th Cir.1978); *United States v. Certain Parcels of Land,* 384 F.2d 677 (4th Cir.1967). The instruc-

tions to the Commissioners reflect the availability of this alternative valuation methodology.

**4.** The Fourth Circuit has recognized that the appropriateness of severance damages depends upon the facts of each case and the sound discretion of the court. *West Virginia Pulp & Paper Co. v. United States,* 200 F.2d 100, 104 (1952).

claims is here the case, the purchaser buys with knowledge of the taking and of its effect on the residue.

■ *Mattox's* rationale is not difficult to discern. A purchaser who knows that the government's prospective partial taking will damage the residue and reduce its value will presumably ensure that this prospect is reflected in a reduction of the purchase price. If so, to award severance damages to such a knowing purchaser is to award double compensation for the same harm, once in the form of the reduced purchase price and then again in the award of severance damages. The remedy, the government argues, is to deny severance damages. This result is said to be consistent with the settled maxim that it is the owner's loss, not the taker's gain, which is the measure of the value of the property taken. *See United States ex rel. Tennessee Valley Authority v. Powelson,* 319 U.S. 266, 281–82, 63 S.Ct. 1047, 1055–56, 87 L.Ed. 1390 (1943); *United States v. Miller,* 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943); *Boston Chamber of Commerce v. Boston,* 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910). An owner has not lost damages to the residue owing to the loss of unitary use if, as purchaser, he did not pay for such unitary use, or at least had the opportunity, through prior knowledge of the taking, to ensure that the purchase price reflected the prospective loss of unitary use. Significantly, however, it follows from this that the parties' knowledge of the prospective taking must be such that there is no reasonable doubt that it will occur and such that the parties have substantial certain knowledge as to how the taking will affect the remainder.

This economic analysis of the government's reading of *Mattox* suggests two additional observations. First, a seller who sells under these circumstances loses that increment of the sales price that would be attributable to unitary use. To avoid this, the seller could simply wait and sell after the taking. The seller's loss of severance damages may be seen, therefore, as a self-inflicted wound. Second, the government in this situation receives a windfall by not having to pay the severance damages to a knowing purchaser that it would have had to pay the seller had the latter kept the property.

Plaza West in turn argues that this economic analysis illustrates precisely why *Mattox* should not be read as the government urges. It suggests that if the parties know severance damages are awarded without regard to the purchaser's knowledge, then the purchase price will reflect "full value" and the government will not get a windfall. In Plaza West's view, *Mattox* does not make a buyer's subjective intent an independent criteria for the award of severance damages; it simply held that an infeasible highest and best use can not be the basis of severance damages.

It is not necessary, at this point, for the court to choose finally between these two competing readings of *Mattox.* In the first place, it is unclear whether Plaza West can establish an integrated or unitary use as a basis for severance damages. Moreover, it is also unclear whether, as in *Mattox,* the precise integrated use of the building or portions of it was known by Plaza West, prior to purchase, to be impossible or highly improbable. If so, severance damages might well be inappropriate, for presumably Plaza West should prudently have taken this factor into account in deciding what to offer to pay for the property. On the other hand, Plaza West may show that while it knew in general of the government's planned taking, it did not have reasonably certain knowledge as to how the taking would affect the remainder.

In any event, the record is not now adequately developed to permit confident conclusions on the appropriateness of severance damages. Thus, the court believes the Commissioners should be given an instruction that defines severance damages, describes the circumstances in which they are warranted, and instructs them that even if Plaza West establishes the appropriate predicates for the award of severance damages, none would be proper if the government proves that Plaza West acquired the building with knowledge that the government's taking would render im-

possible or highly improbable the contemplated integrated use of portions of the building. But the Commissioners' findings on knowledge may not be conclusive on the issue. They will also be instructed that if they find an integrated or unitary use sufficient to warrant severance damages, then their report should set forth fully these facts and their conclusions as to the amount of damages, even if they find that Plaza West's knowledge of the taking precludes the award of such damages. The court will then reexamine the *Mattox* issue with the benefit of a fully-developed record.

### D. *Renovation, Lost Opportunity and Frustration of Plans*

The heart of the Plaza West's claim is that the government's taking threw a spanner in the works of their plans to renovate the entire building. Specifically, Plaza West contends that the building cannot be renovated piecemeal, that the government's taking frustrates renovation plans, that there is no market for the rental of the remainder of the building for the short period of the taking and that the remaining portions cannot be leased for a longer period because the entire building must be renovated at the same time, namely when the government vacates. Even assuming the factual validity of these contentions, it appears that settled legal principles preclude Plaza West's claim for added compensation for the frustration of its renovation plans.

 Few principles are any more settled than that the condemnor must pay only for what it takes and not for opportunities the owner may lose. In the words of Justice Douglas:

> It is a well settled rule that while it is the owner's loss, not the taker's gain which is the measure for compensation for the property taken, not all losses suffered by *the owner are compensable under the Fifth Amendment.* ... [T]he sovereign must pay only for what it takes, not for the opportunities the owner may lose.

*United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 281–82, 63 S.Ct. 1047, 1056, 87 L.Ed. 1390 (1943). Put another way, "frustration and appropriation are essentially different things." *Omnia Commercial Co. v. United States*, 261 U.S. 502, 513, 43 S.Ct. 437, 439, 67 L.Ed. 773 (1923). The Fifth Amendment allows only fair market value, it does not guarantee a return on investment. In essence, Plaza West seeks consequential damages for the frustration of its renovation and rental plans. Such damages are impermissible in federal condemnation proceedings. *See United States v. Petty Motor Co.*, 327 U.S. 372, 378, 66 S.Ct. 596, 600, 90 L.Ed. 729 (1946) (recovery for loss of profits, loss of good will and relocation expenses refused in federal condemnation of leasehold interest in a building); *see also United States v. Grand River Dam Authority*, 363 U.S. 229, 236, 80 S.Ct. 1134, 1138–39, 4 L.Ed.2d 1186 (1960) (no recovery for frustration of state agency's plans for construction of hydroelectric system).

Given these principles and given the likelihood that there will be some evidence concerning Plaza West's plans, the court concludes that the Commissioners should be instructed on the impermissibility of awarding any consequential damages or damages for frustration of renovation plans. Although not necessarily pertinent in this context, it is nonetheless worth noting that Plaza West's foreknowledge of the government's plans to occupy until 1987 should have been taken into account by them in setting the building's purchase price and making renovation plans.

### E. *Highest and Best Use*

 It appears the parties will dispute the highest and best use issue. The government will likely argue that the building's highest and best use is its current use, namely a multi-tenant office building. Plaza West may urge instead that the highest and best use is as a *fully renovated* multi-tenant office building. Whether the evidence supports such a claim is, at this point, unclear. Evidence adduced may disclose that renovation is possible, but highly problematical as to whether it will occur, where it will occur and what its cost might

be. If so, the Supreme Court teaches that the potential for renovations should not be considered in determining the property's highest and best use. In *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934), the following principles were confirmed:

> The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

> \* \* \* \* \* \*

> Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth.

*Id.* at 255–56, 54 S.Ct. at 708–709 (citations omitted); *United States v. 2.33 Acres of Land*, 704 F.2d 728 (4th Cir.1983) (highest and best use is integral part of severance damages case); *see also United States v. 320 Acres of Land*, 605 F.2d 762 (5th Cir. 1979); *United States v. Meadow Brook Club*, 259 F.2d 41, 45 (2nd Cir.), *cert. denied*, 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958); *cf. United States v. Bedford Associates*, 548 F.Supp. 732 (S.D.N.Y.1982), *aff'd in part and modified in part*, 713 F.2d 895 (2nd Cir.1983); *United States v. Improved Premises*, 359 F.Supp. 528 (S.D.N.Y.1973).

Thus, only after the record is more fully developed before the Commissioners will the highest and best use issue be adequately illuminated for consideration by this court. Moreover, the issue is, in the first instance, one for the Commissioners, whose decision will be reviewed by this court.[5] To ensure an adequate basis for review, the instructions require the Commissioners to set forth the facts and reasons on which they rely for their conclusion as to highest and best use of the property.

### F. Comparable Leases Involving the United States

■ Government agencies and organizations abound in this area. It is, therefore, quite likely that a search for comparable leases will turn up some involving the government as lessee. Anticipating this, the United States suggests that the Commissioners be instructed to consider only those comparable leases that are between private parties. Well-settled authority supports this view.[6] But at least one court has correctly recognized that an exception to this rule is warranted where the fact that the parties were potentially condemnor and condemnee either was not known or had no influence whatever on the negotiations. *See Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 19 (5th Cir.1969); *Slattery Co. v. United States*, 231 F.2d 37, 41 (5th Cir. 1956). Accordingly, the court will instruct the Commissioners that the party seeking to introduce evidence of a lease involving the United States bears the burden of showing, by a preponderance of the evidence, that the lease was wholly voluntary and not overshadowed or affected in any way by the possibility of condemnation.

**5.** *See United States v. 320.0 Acres of Land, etc.*, 605 F.2d 762, 817–18 (5th Cir.1979); *United States v. 100 Acres of Land*, 468 F.2d 1261, 1266–68 (9th Cir.1972), *cert. denied*, 414 U.S. 822, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973).

**6.** *United States v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir.1980); *United States v. 46,672.96 Acres of Land*, 521 F.2d 13, 17 (10th Cir. 1975); *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 17–19 (5th Cir.1969); *United States ex rel. TVA v. Easement and Right-of-Way*, 405 F.2d 305, 307 (6th Cir.1968); *Evans v. United States*, 326 F.2d 827, 831 (8th Cir.1964); *Slattery Co. v. United States*, 231 F.2d 37, 41 (5th Cir.1956); *United States v. 13,255.53 Acres of Land*, 158 F.2d 874, 877 (3rd Cir.1946); *cf. Washington Metropolitan Transit Authority v. One Parcel of Land*, 548 F.2d 1130 (4th Cir.1977); *Nash v. D.C. Redevelopment Land Agency*, 395 F.2d 571, 575–577 (D.C.Cir.1967), *cert. denied*, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968).

## G. *Conclusion*

The attached Charge to Commissioners incorporates the rulings and principles discussed in this opinion. There is, of course, always an opportunity for the Commissioners, if the evidence warrants, to ask the court additional questions.

The clerk of this court is directed to send copies of this Memorandum Opinion to counsel of record.

### APPENDIX

### CHARGE TO COMMISSIONERS

December 17, 1987

To: Henry A. Thomas, Esquire
C.S. Taylor Burke, Jr.
John S. Karcha, Esquire

### *Introduction*

You have been selected to serve on a Commission appointed by the court pursuant to the provisions of Rule 71A(h) of the Federal Rules of Civil Procedure to determine "just compensation" for the property, a leasehold, that the United States of America has condemned in this case under its constitutional power of eminent domain. Mr. Thomas is designated as your Chairman. The only issue that you will try is how much the United States should pay for the leasehold it has taken. As far as you are concerned, the United States has the right to condemn the property involved herein, and you will not concern yourselves with any questions relating to the right of the United States to take the leasehold, or its reasons for taking it.

The estate taken is a leasehold term, beginning December 29, 1986, and ending February 29, 1988, together with the right to remove, within a reasonable time after the expiration of the term, any and all fixtures, additions, signs, improvements, and structures put in place by or for the United States. As of December 29, 1986, the taking was for an indefinite period, since the Government had not specified a definite term. As of May 14, 1987, when the Complaint in this lawsuit was filed, the

date of the termination of the period of taking became fixed as February 29, 1988.

The public use for which the leasehold was taken was for office space and related purposes. Exhibit "A" attached to these instructions contains a description of the exact office space taken. Exhibit "B" attached to these instructions contains a plat of the office space taken.

This is a complete description of the rights acquired. Any interpretation or assumptions by any owner or witness placing restrictions on the taking should be disregarded.

### *Procedure*

(1) *Time and place.* You will conduct your hearings at such times and places as you may select. With regard to times, it is desirable, of course, that your work be done as expeditiously as is compatible with efficiency and consistent with justice. Reasonable notices of the times and places of hearings should be given the interested parties or their attorneys, and you may call upon the United States attorneys to provide you with forms of such notices. As to the place of the hearing, it is suggested that a place be selected that is convenient to the Commissioners, the attorneys, the parties, and the witnesses.

(2) *Powers of Commission.* Under Rule 71A(h), you, as Commissioners, have what are known as the powers of a master as provided in subsection (c) of Rule 53, and the proceedings shall be governed by the provisions of Rule 53(d)(1) and (2). Rule 53 provides in substance that you have the power to regulate the proceedings in the hearings that will be held before you and have the authority to do all acts and take all measures necessary or proper for the efficient performance of your duties. While the parties to the action will present evidence to you bearing on the issue of just compensation, nevertheless you as Commissioners may require the production of evidence upon all matters embraced in this issue, including the production of all books, papers, vouchers, documents, and writings that might be applicable to that issue. This may be done by issuance of subpoenas

obtained by request from the Clerk of the Court, and counsel for the parties will be glad to aid you in this regard.

You have authority to put witnesses on oath, and you may examine any of the witnesses called by either of the parties, and also may examine any witnesses you may wish called on your own behalf. If you call witnesses, counsel may also examine them.

(3) *Ruling on evidence.* In the course of the hearings, certain questions as to the admissibility of evidence will almost surely arise and will have to be decided. Since your chairman is an experienced attorney, you should allow him to rule on those questions.

In this regard if you find the evidence is going, in your opinion, far afield and that your time is being imposed on or abused by the introduction of extraneous voluminous evidence, you have the right to limit the evidence. If the parties object to that limitation they can bring the matter to the court's attention for a ruling.

(4) *Offers of proof.* If during the hearing an objection of a party to certain testimony has been sustained, the party against whom the ruling has been made may feel that in order to preserve the record he should make what is referred to as an offer of proof under Rule 103 of the Federal Rules of Evidence. Since the admissibility of the evidence which the party is offering to prove involves a legal determination of the Court, and the evidence might have an improper influence on your final award, you are instructed that the attorney offering such evidence should be allowed to dictate the offer of proof to the reporter in the absence of the Commissioners and the transcript should be filed later as a part of the record.

(5) *Open and close.* Since the burden of proof on the issue of value is on the landowner, the proper order of proof will be for the landowner to call his witnesses, and then have the United States call its witnesses, then have the landowner call his rebuttal witnesses, if any, and finally the United States may, if it desires, call witnesses in surrebuttal. If you desire to hear oral arguments, the landowner should be allowed to open and close.

(6) *Limiting witnesses.* You are at liberty to impose a reasonable limit on the number of expert witnesses that may testify as to land values or damages, provided that this limitation is announced in advance of the hearing. In such an event the parties will also be allowed to present other witnesses to testify as to other facts and aspects of the case.

(7) *Court reporter.* A competent court reporter will be provided by the government to report the evidence that you may receive. If you desire a transcript of any testimony, the court should be notified and it will direct that such transcript be furnished. If any of the parties desire a transcript, they may order it from the reporter and must make arrangements to pay for it at the regular rates.

### Weighing the Evidence

(1) *Burden of proof.* In a condemnation case the burden is on the landowners to establish, by a preponderance of the evidence in the case, that the fair market value, at the date of taking, of his estate or interest in the property which has been taken by the government, was as much as he alleges.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more persuasive force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. It does not necessarily mean the greater number of witnesses; the testimony of a single witness which produces in your minds a belief in the likelihood of truth is sufficient for the proof of any fact, and would justify an award in accordance with such testimony even though a number of witnesses may have testified to the contrary if, after fully considering all the evidence, you hold greater belief in the accuracy and reliability of the one witness.

In determining what was the fair market rental value at the date of taking, as established by a preponderance of the evidence in the case, the Commissioners may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits in evidence, regardless of who may have produced them.

(2) *Expert or opinion testimony.* You may receive expert or opinion testimony as to fair market rental value. A witness who by education and experience has become expert in any art, science or profession, may state his opinion as to a matter in which he is an expert, and may also state the reasons for such opinion. The law permits the owner of property taken in a condemnation proceeding to testify as to its opinion of the fair market value of the estate or interest condemned in the property as of the time of taking, and the testimony of an owner as to rental value is to be weighed and considered by you the same as that of any other witness expressing an opinion as to fair market rental value at the time of taking.

The testimony of an expert witness as to fair market rental value constitutes his opinion based on education, study, experience, investigation, knowledge of the property, prices paid for lease of other similar property in the vicinity, and all reasons given for such opinion.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide that the opinion of a witness was expressed without sufficient investigation or knowledge of the material facts to form an accurate opinion, or if he has assumed erroneous facts, or facts which do not exist, or if you should conclude that the reasons given in support of the opinion are unsound or based on improbable or remote speculation, you may reject that opinion or give it such weight you may think it deserves.

The evidence in a condemnation case also usually consists of maps, diagrams, charts, summaries, as well as expert testimony of appraisers and other claimed experts as to the fair market rental value of property.

The testimony of an appraiser or an accountant or of other experts as to any diagrams or charts or summaries, and any summaries or diagrams or charts admitted into evidence, are competent for the purpose of explaining or summarizing facts disclosed by his testimony, or by other testimony, or by photographs or maps or other documents which are in evidence in the case. If you should find that such charts or diagrams or summaries do not reflect facts and figures shown by the testimony or other evidence in this case, then you should disregard them.

In other words, such charts, diagrams and summaries are used only as a matter of convenience, and if and to the extent you may find that they are not in truth summaries of facts and figures shown by the evidence in the case before you, you must disregard them entirely.

(3) *Witness credibility.* You are the sole judges of the credibility of any of the witnesses and of the weight to be given their testimony. A witness is presumed to speak the truth. But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence. You should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence whtich tends to indicate whether the witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider also any relation each witness might bear to either side of the case, the manner in which each witness might be affected by the verdict, and extent to which, if at all, each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or to an unimportant

detail and whether the discrepancy results from innocent error or willful falsehood. If you find the presumption of truthfulness to be outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you may think it deserves.

A witness may be impeached or discredited by contradictory evidence, or by evidence that at other times the witness has made statements which are inconsistent with his present testimony. If you believe any witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

A witness may be impeached or discredited by contradictory evidence, or by evidence that at other times the witness has made statements which are inconsistent with his present testimony. If you believe any witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to disregard such witness' testimony in other particulars, and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce conviction in your minds, as against the testimony of a lesser number of witnesses or other evidence which does produce conviction in your minds.

(4) *Arbitrary formulas.* Generally speaking, in condemnation cases valuation is not a matter of mere mathematical calculations but involves the exercise of judgment. As said by the Supreme Court of the United States: "The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas."

(5) *View of property.* The law contemplates that the commissioners will personally view the property to enable them to better understand and weigh the testimony which they hear during the course of the trial. The fact that you are to view these lands does not mean that you will be entitled to disregard the testimony in the case and decide the questions of just compensation solely upon your knowledge and opinions based on what you may see during your view. You may, however, take into consideration what you will see on the view, and you will base your awards on both the view and the testimony that you will hear. You should keep in mind in connection with your view that you are not concerned with the value of the leasehold as it may exist at the time the view is taken, but with its value as of the time that it was condemned. During such inspection of the property it is appropriate that you be accompanied by the landowner and counsel representing the various parties who will point out to you various features of the property which will be developed in the testimony, but it is not appropriate at such time to allow the parties to "argue" the case or offer off-the-record comments concerning the merits of the case.

### Just Compensation

(1) *Generally.* The Constitution of the United States provides that private property shall not be taken for a public use without the payment of "just compensation."

"Just compensation" means the fair and reasonable market rental value of the leasehold or property interest taken, to be determined as of the date of taking. It is the owner's loss, not the taker's gain, which is the measure of value of the property taken.

In the case of a leasehold taking, the measure of just compensation is the fair rental value of the premises taken for the period taken. By fair rental value is meant the rental price in cash, or its equivalent, that the leasehold would have brought at the time of taking, if then offered for rent in the open market, in competition with other similar properties at or near the location of the property taken, with a reasonable time allowed to find a tenant.

What is a reasonable time within which to find a tenant depends upon existing con-

ditions and the surrounding circumstances, including the nature and character of the property, and the use for which the property is suitable or physically adaptable.

You are to assume that the lessee in such a transaction was desirous of leasing the property, but not forced to lease, and that the lessor was desirous of leasing the property, but not forced to rent; and that both tenant and owner were fully informed on that date as to all circumstances and factors, favorable and unfavorable, with respect to the property.

In arriving at your estimate of fair market rental value, you should take into account all factors which could fairly be suggested by the lessor to increase the rental price paid, and all counter-arguments which the lessee could fairly make to reduce the rental price to be paid by him, to the extent that you believe such matters would have been considered in the bargaining as to price.

In determining the fair market value, you may give consideration to the indefinite and short-term nature of the government taking, as such terms would be considered in an arms-length transaction between a willing lessor and a willing lessee.

As stated, in finding the fair market rental value, you should determine the highest and best use of the property taken. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of market rental value, but to the full extent that the prospect of demand for such use affects the market rental value while the property is privately held. In this regard, you should consider and take into account anything which might be brought forward and reasonably be given substantial weight in negotiations between a willing lessor and a willing lessee. However, you should not consider as a factor affecting rental value anything which depends upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable. Such matters should be excluded from your con-

sideration; otherwise mere speculation and conjecture would become a guide for the ascertainment of fair market rental value.

Because this is a taking of a temporary occupancy of a building, you may consider in your determination of the fair market rental value all the elements which certainly and directly affect the market price agreed upon by a willing lessor and a willing lessee, including any extraordinary and unusual circumstances of the lease. Such elements may include, for example, any costs to the lessor of providing the temporary rental that would affect the market rental value. In other words, such costs and similar items are to be considered by you not as independent items of damage, but to aid in the determination of what the market rental price is that would be asked and paid for such a temporary occupancy of the building.

However, in fixing the fair market rental value which would be agreed upon by a willing lessor and a willing lessee, you may not consider such consequential damages as (1) any unwillingness of the owners to lease any portion of the building, (2) any frustration of the owner's plans and (3) any opportunities the landowner may have lost by reason of the taking of the leasehold interest in part of the building.

Your determination is to be made in the light of all facts affecting rental value, as shown by the evidence in the case, together with any facts which, although not shown by the evidence in the case, are of such widespread general knowledge in the community as not to require proof.

In determining the fair market rental value of property, you may consider not only the opinions of the various witnesses who testify as to market rental value, but also all other evidence in the case which may aid in determining market rental value, such as location of the property, the surroundings and general environment, and peculiar suitability or physical adaptability of the property for particular uses, if any; all as shown by the evidence to have existed at the time of the taking.

Determination of the fair rental value of an estate or interest in land, at a given

date, is necessarily based upon assumption, rather than fact. So, it is not necessary, in order to establish proof of market rental value, to point out any particular person who was ready, able and willing, at the time of the taking, to rent the property at any particular price.

The fact that this case involves a controversy between the United States and private citizens is no reason why you should make a greater or lesser award than you would if such controversy were between private citizens. As said by the Supreme Court of the United States:

> He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.

Consequently, in determining the value of any property or interests therein, the same considerations are to be regarded as in the lease or sale of property between private individuals, and in such cases the inquiry is: "What is the leasehold worth on the market?"

(2) *Value to the United States.* In determining the fair market rental value of the property in question on the date of taking you shall not consider or be influenced by the fact that the government needs the property, or that these proceedings are pending, nor shall you consider or in any way be influenced by the fact that the government is able and willing to pay for the rental of the property or that the defendant is or may be unwilling to lease. It would be improper for you to permit such matters to affect your verdict.

### Severance Damages

Where part only of a landowner's property has been condemned and the remaining property of such landowner was held as a unit with the property condemned or other estate condemned, then the owner may, in appropriate circumstances, be entitled to severance damages in addition to the value of the property taken. These are termed "severance damages." They occur when the remaining property, which was held as a unit (but not necessarily contiguously)

with the condemned property, is damaged as a result of the partial taking by reason of the relation between that condemned and that remaining. Consequently, when only a part of a piece or parcel of property is taken, the value of that part may not be the sole measure of compensation or damages to be paid to the owner; the injury, if any, to that part not taken is also to be considered. Such an injury cannot occur unless you find from a preponderance of the evidence that there is a functional or physical relation between the portions of the building taken by the government and the remaining portions and that, as a result of this relationship, the government's taking diminished the rental value of the remainder.

Thus, if you find from the testimony that the market or rental value of the property remaining after a portion that has been taken by the government has been reduced, then the landowner would be entitled to recover as just compensation for the property taken an amount representing the market rental value thereof for the property taken, plus the reduction in market rental value, if any, of the portion of the building or property remaining.

It is also acceptable for you to measure severance damages by an alternative method by determining the difference between the fair market rental value of the entire building before the taking and the fair market rental value of the portion remaining after the taking. In using this method, however, you may not assign any value to those items the court has told you are unrecoverable consequential damages.

At all events, severance damages should not be awarded where an owner purchased the property with full knowledge of the prospective taking and of its consequences for the value of the remainder or residue. The owner, as purchaser, is presumed to have reflected this knowledge in the purchase price and the award of severance damages would confer a double benefit on the owner. Note that it is irrelevant whether or not the purchase price actually reflected the prospective taking; the effect is presumed from the knowledge. Note

further, however, that the owner's knowledge of the prospective taking must be such that the owner, as a reasonably prudent purchaser, would have no reasonable doubt that the taking would occur and such that the owner, as a reasonably prudent purchaser, would have reasonably certain knowledge as to how the taking would affect the value of the remainder. It is under these circumstances that severance damages are inappropriate.

### Leases of Similar Property

Evidence may be presented as to leases of allegedly similar or comparable properties in the vicinity. Bona fide leases of comparable properties, made within a reasonable time before the date of taking of the property involved, may be the best obtainable evidence of market rental value at the time of taking. Of course, there will be a difference in the size, shape, location and immediate surroundings of two pieces of property, and perhaps difference in other respects as well, and yet to the extent that they are similar or comparable, the price for which one rented on the open market is usually the best evidence of the fair market rental value of the other. "Similar" does not mean "identical," but means to have a resemblance. Obviously, no two properties are exactly alike in every respect, but this does not prevent their being comparable. Such leases admitted in evidence should be considered by you insofar as such leases, looking at the circumstances of each instance, may evidence or throw light upon the fair market rental value of the property condemned unaffected by the plaintiff's intention to acquire the property for the public use.

Offers to lease or letters of intent are not admissible—because they may be made without responsibility. Leases to be considered should be limited to completed transactions. Contracts for sale are not admissible except in unusual circumstances because there are so many times and so many possibilities that the contract will not be completed.

The prices paid for leases of similar property between private parties are admissible to prove the market rental value of the property under condemnation. The prices paid for leases of similar property between the United States and a private party are admissible to prove market value of the property under condemnation only if the party seeking to introduce such evidence carries the burden of showing, by a preponderance of the evidence, that the sale was wholly voluntary and not overshadowed or affected in any way by the possibility of condemnation proceedings. However, what the United States has offered for lease of the property in condemnation is not admissible in evidence and should not be considered in making your determination of just compensation for the leasehold taken.

### Attorney Fees and Interest

In making your award you are not to allow anything to the landowner for his attorney's fees or expenses in connection with this litigation. These are not proper elements for you to take into consideration in reaching your decision. Neither are you to allow the landowner any interest on the award which you may reach, because the federal statutes themselves make provision for such interest as is allowed.

### Government's Deposit

It may in some manner come to your attention that the United States has made a deposit of money with the court as estimated compensation under the Declaration of Taking statute. The purpose of such deposit is to give the government immediate possession of the property and to relieve it of the burden of paying interest on the amount deposited, and also to give the property owner the immediate use of the money. The amount deposited is not to be construed as either an admission of value by the government nor a limit of value as to the landowner. The deposit of estimated just compensation is not evidence of value, has no bearing whatever on value, and will be disregarded by you in reaching your decision as to the value of the property taken. You are required to fix your value

without any reference at all to the amount deposited.

### Taxes

You should not take into account or permit yourself to become informed in any manner with respect to the assessment valuation placed on the property for purposes of real estate taxation.

### Quotient Verdict

Sometimes in determining values, fact finders are inclined to arrive at what is termed in law a "quotient verdict." A quotient verdict is one arrived at by each Commissioner setting down some figures in writing and dividing the figure by three to arrive at the verdict. Another method of arriving at a quotient verdict is by adding together the values fixed by all the witnesses who have testified as to the fair market rental value, and then dividing that total by the number of witnesses, fixing the value of the leasehold in that fashion.

A third method of arriving at a quotient verdict might be through taking the highest and the lowest rental value and, as is commonly said, "splitting the difference."

No one of these methods should be used or considered by you in any manner in arriving at just compensation. You should be careful to avoid any such procedure, and you should base your award upon all the evidence considered as a whole and thus arrive at an amount which in your opinion is just compensation for the property taken.

### Report of Commission

The report you file shall be subject to the provisions of Federal Rule of Civil Procedure 53(e)(2). To enable the court to review your report and findings, it is necessary that you make specific findings as to the matters on which your valuations are based; show in your report how you applied the principles of law in reaching your ultimate conclusion; and state your reasons for arriving at particular valuations.

While you are not required to make a finding of fact on every matter of evidence that is introduced by the parties at the hearing, it is essential that your report be sufficiently comprehensive to point out the path followed by you in reaching your decision as to just compensation, and your reasons for so doing. You are not to ask the parties to submit draft reports. The report is to be prepared solely by you.

Your report should include what standards of value you accepted, such as comparable leases, what you find to have been the highest and best use of the property at the time of the taking, and what facts and reasons you relied on in reaching your conclusion as to highest and best use and as to the existence or nonexistence of severance damages.

In determining the standards you must, of necessity, reveal which line of testimony you have relied upon and why. For example, did this witness reveal superior qualifications, knowledge, or analysis of the subject property? Has the explanation of his methods of appraisal and their application to the subject property revealed substantial factual information upon which he based his opinion, and on which you could rely?

Your report preferably should be unanimous; however, in the event of disagreement among you which you cannot reconcile after a full and fair consideration of the views of each of you, then a decision by a majority will be accepted. The minority member may, in that circumstance, file a minority report if he desires.

### General Precautions

All of you have probably heard juries admonished in both civil and criminal cases not to discuss such cases with outsiders or to permit outsiders to discuss the cases with them. Your function in this case is somewhat, though not entirely, similar to that of a jury, and you may well have the problem that jurors sometimes have about interested parties wishing to have an outside discussion of the case. This should be avoided by you. If any person undertakes to discuss the case with you privately, tell him that you are on the Commission and that it is not proper for you to have a private conversation with him about the

case or about the tract in which he is interested. Should such person persist in his efforts, the matter should be reported to the court.

The Commission should not undertake any independent investigation, nor should it read the record or files of proceedings before the court in this case.

The instructions herein contained are general in their nature; some of the problems that have been touched upon may not arise in this case, and on the other hand, some may arise which have not been mentioned. In the latter event you may call upon the court for further instructions. In doing so, you should frame your questions as precisely as you can and submit them to the court in a writing, signed by one or more Commissioners.