902 F.2d 1568
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
COUNTY OF ONTONAGON, MICHIGAN, Plaintiff-Appellee,
v.
LAND LOCATED IN DICKINSON COUNTY, MICHIGAN; and M.A. Hanna
Company, f/k/a Hanna Mining Company, Defendants-Appellants.
 No. 89-1705.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1990.
 
 Before RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, M.A. Hanna Company (Hanna), appeals from a district court order granting a motion for a new trial filed by plaintiff County of Ontonagon, Michigan (Ontonagon County), in this action to establish just compensation for a temporary taking. Because we find that the district court did not abuse its discretion in granting a new trial based upon the erroneous admission of testimony having no bearing on the market rental value of the property subject to the temporary taking, we affirm.
 
 I.
 
 2
 In Ontonagon County, the local economy is driven largely by the forest products industry, and specifically by operations at the Champion Paper Company Mill. In 1984, the Ontonagon County Board of Commissioners (Board) adopted a resolution aimed at protecting the viability and long-term competitiveness of the mill. Specifically, the Board decided to repair various aging railroad beds to ensure continued efficient railroad access to the mill and the nearby harbor. In furtherance of this objective, the Board resolved to undertake eminent domain proceedings to acquire a non-exclusive interest in the abandoned Groveland Mine and assorted mining equipment located in neighboring Dickinson County, Michigan, in order to extract ballast for the railroad beds. Accordingly, the Board authorized the county's attorney to offer $25,000 to Hanna, which owned Groveland Mine, as just compensation for the temporary use of the mine and equipment located there.
 
 
 3
 When Hanna rebuffed Ontonagon County's $25,000 offer for temporary control of the mine and machinery, the county filed a complaint against Hanna in the United States District Court for the Western District of Michigan.[1] In accordance with the Michigan Uniform Condemnation Procedures Act, see Mich.Comp.Laws Ann. Sec. 213.51 et seq., Ontonagon County asserted a right to acquire the mine by eminent domain and requested a jury trial to establish the amount of just compensation to be paid for the temporary taking of the mine and machinery. See id. Secs. 213.55, 213.62. During the pendency of the action, Ontonagon County obtained two preliminary injunctions--one running from June 1, 1984, until November 10, 1986, and the second remaining in force from November 1986, until October 1, 1987--preventing Hanna from dismantling and removing rock crushing machinery at the mine.[2]
 
 
 4
 The case ultimately proceeded to trial in 1988,[3] and the jury returned a $1.2 million verdict in favor of Hanna as just compensation for the temporary taking of the mine and related mining equipment. Ontonagon County promptly moved for a new trial under Federal Rule of Civil Procedure 59(a) citing several justifications for such relief. The district court granted the county's motion on the theory that prejudicial evidence concerning negative effects flowing from the temporary taking was improperly admitted over the county's objection.[4] (App. at 48-53). Hanna then moved for reconsideration of this ruling and petitioned the district court to certify its order for interlocutory appeal. The district court denied Hanna's motion for reconsideration, but certified its ruling on the Rule 59(a) motion for immediate appeal pursuant to 28 U.S.C. Sec. 1292(b). We granted Hanna's section 1292(b) petition for permission to appeal, see In re: M.A. Hanna Co., No. 89-8021 (6th Cir. June 21, 1989), thereby bringing before this court the single evidentiary issue raised in the county's Rule 59(a) motion for a new trial.
 
 II.
 
 5
 "If a trial court has improperly admitted evidence and a substantial right of a party has been affected, the trial court may order a new trial on the motion of a party or on its own initiative on all or part of the issues." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989) (citations omitted). "Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing [of] abuse of discretion." Id. We have defined an "abuse of discretion" as "a definite and firm conviction that the trial court committed a clear error of judgment." Id.
 
 
 6
 The evidence that the district court characterized as improperly admitted in this case pertains to the negative effects attributable to Ontonagon County's temporary taking of the Groveland Mine and machinery. Specifically, Hanna introduced evidence that the county's temporary taking of Hanna's rock crushing equipment substantially reduced the guaranteed price for Hanna's auction of all other equipment from its abandoned mine.[5] The district court described such testimony as evidence having no bearing upon the market rental value of the land and equipment temporarily taken by the county. Accordingly, the court granted the county's motion for a new trial upon finding that the erroneous admission of such evidence substantially prejudiced the county. The propriety of the district court's ruling turns on the scope of relevant and admissible evidence in cases involving temporary takings of private property.[6]
 
 
 7
 It is clearly established that "[b]oth the federal government and the individual state governments possess the power of eminent domain." R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure Sec. 15.10 (West 1986). Whenever a governmental unit effects a taking of property by exercising its power of eminent domain, however, the fifth amendment requires the governmental unit to provide "just compensation" in exchange for the taking.[7] See U.S. Const. amend. V; See also Mich. Const. art. 10, Sec. 2 ("Private property shall not be taken for public use without just compensation...."). In cases involving temporary takings, "just compensation" ordinarily refers to the "market rental value" of the property taken. See United States v. General Motors Corp., 323 U.S. 373, 382 (1945); see also Kimball Laundry Co. v. United States, 338 U.S. 1, 7 (1949); Yuba Natural Resources, Inc. v. United States, 821 F.2d 638, 641 (Fed.Cir.1987). The "market rental value" of property "does not fluctuate with the needs of condemnor or condemnee but with general demand for the property." United States v. Petty Motor Co., 327 U.S. 372, 377 (1946); see also Kimball Laundry, 338 U.S. at 5; State Highway Comm'n v. Minckler, 62 Mich.App. 273, 278-79 (1975). Therefore, consequential damages are not directly recoverable as a component of "just compensation" for a temporary taking. See General Motors, 323 U.S. at 382; see also United States v. 1735 North Lynn Street, 676 F.Supp. 693, 701 (E.D.Va.1987).
 
 
 8
 In General Motors, 323 U.S. 373, however, the Supreme Court expressed concern that the exclusion of consequential damages from just compensation in cases of temporary takings might allow abuse of the eminent domain power. See id. at 382. The Court identified the potential for inadequate compensation "when the Government does not take [a property owner's] entire interest, but by the form of its proceeding chops it into bits, of which it takes only what it wants, however few or minute, and leaves [the property owner] holding the remainder, which may be altogether useless to him, refusing to pay more than the 'market rental value' for the use of the chips so cut off." Id. To guard against this type of abuse, the Court in General Motors authorized the admission of evidence concerning the costs of temporary displacement "not as independent items of damage but to aid in the determination of what would be the usual--the market--price which would be asked and paid for such temporary occupancy" of the property. Id. at 383; see also United States v. Katz Drug Co., 150 F.2d 681, 684 (8th Cir.1945) (discussing General Motors ). The Court cautioned that "[p]roof of such costs as affecting market value is to be distinguished from proof of value peculiar to the [specific property owner], or the value of good-will or of injury to the business of the [property owner] which, in [a temporary taking] case, as in the case of the condemnation of a fee, must be excluded from the reckoning." General Motors, 323 U.S. at 383.
 
 
 9
 We agree with Hanna's position that the General Motors standard permitted the introduction of testimony regarding the taxes and utility costs that accrued during the temporary taking period as relevant to the "market rental value" of the property temporarily taken. See id. at 382-83; cf. also In re Grand Haven Highway, 357 Mich. 20, 31-32 (1959) ("[T]he evidence introduced in this condemnation proceeding showing expenses occasioned by business interruption was properly introduced for consideration as to value and weight by the commissioners making the award."). Indeed, the district court accepted this argument and correctly allowed testimony concerning such matters. Proceeding from this unassailable proposition, Hanna contends that proof of the alleged reduction in the auction values of various pieces of mining equipment not taken by Ontonagon County likewise had some bearing on the market rental value of the property that was temporarily taken. We disagree. Such diminution in the value of property not taken by the county had no impact whatsoever on the market rental value of the property subject to the temporary taking. Proof of such an indirect and attenuated impact would contradict the Supreme Court's directive that "market rental value" must not "fluctuate with the needs of condemnor or condemnee but with general demand for the property." Petty Motor, 327 U.S. at 377; accord Minckler, 62 Mich.App. at 278-79. Instead, the just compensation inquiry must be limited to the factors bearing upon the market rental value of the property subject to the temporary taking. See, e.g., General Motors, 323 U.S. at 383 (allowing proof of "elements which would certainly and directly affect the market price") (emphasis added).
 
 
 10
 Hanna characterizes the alleged decrease in the value of property not taken by the county as severance damages, which measure the effect of the taking on the entire estate when only a portion of the estate is taken. See United States v. 2,560.00 Acres of Land, 836 F.2d 498, 502 (10th Cir.1988). Severance damages, however, arise only "when a partial taking damages the residue retained by the condemnee." 1753 North Lynn Street, 676 F.Supp. at 698. Here, the "residue" consisted of mining equipment and machinery, which Hanna could readily sell whenever it so desired. There was no "physical functional connection between the property taken [i.e., the rock crushing equipment] and the residue [i.e., the other mining machinery]," no "synergism due to their physical relationship or union." Id. at 699. Absent such "an integrated or unitary use[,]" severance damages are not appropriate. Id. at 700. Moreover, the "negative effects" testimony in this case focused upon the impact that the temporary taking of the rock crushing equipment had upon Hanna's plans to liquidate all of its machinery through an auction. As the Supreme Court has repeatedly emphasized, frustration of plans is not compensable in a takings case. See, e.g., United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 281-82 & n. 12 (1943) (collecting cases); 1735 North Lynn Street, 676 F.Supp. at 701. Absent some effect on the market rental value of the property subject to the taking, therefore, evidence of any inconvenience occasioned by the temporary taking had no place in the trial of this case. Cf. General Motors, 323 U.S. at 383 ("Proof of such costs as affecting market value is to be distinguished from proof of value peculiar to the [property owner.]"); Minckler, 62 Mich.App. at 278 ("[W]hen determining the amount of compensation, or the market value of the property taken, no account should be given to the values or necessities peculiar to the owner."). In sum, we find that the testimony regarding the impact of the temporary taking on Hanna's auction plans should not have been allowed, and that the district court did not abuse its discretion in granting Ontonagon County's motion for a new trial based upon the erroneous admission of such evidence.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Subject matter jurisdiction was predicated upon diversity of citizenship. See 28 U.S.C. Sec. 1332(a). Ontonagon County is a citizen of Michigan, and Hanna is a Delaware corporation with its principal place of business in Ohio
 
 
 [2]
 Ontonagon County obtained the initial injunction in the course of the action filed in 1984. The second injunction was the product of a second lawsuit filed on November 10, 1986. The two cases were consolidated for trial, and may be treated as components of a single action presently before this court on appeal
 
 
 [3]
 The temporary taking ended before the trial began, thus allowing the jury to assess the full amount of damages incurred as a result of the taking
 
 
 [4]
 The district court, however, rejected Ontonagon County's arguments that the $1.2 million verdict was excessive and against the weight of the evidence. (App. at 41-48)
 
 
 [5]
 The disputed evidence is encompassed in the following colloquy between Hanna's counsel and William E. Welsh:
 Q: All right. Mr. Welsh, was the filing of the condemnation on June 1st, 1984--did that have an impact or an effect upon Hanna's decision to sell off the machinery and the equipment that it possessed?
 A: Yes. It was a negative impact. We had--I mentioned to you we had open negotiations with the Perry Equipment Company in April, and Perry was going to take all of the equipment at the plant and liquidate it for us. They intended to hold an auction. And some of the really attractive items at an auction, items that bring in lots of buyers--and the more buyers you have, the more seller--the more equipment you sell and the higher the price you receive. The really attractive items was (sic) the crushing system which was condemned.
 So we had the first negotiation with Perry which included all the equipment. We were then forced to pull this crushing system out of that inventory. And Perry reduced its guaranteed price to us by $1,000,000.
 (App. at 102). This testimony drew an immediate objection from Ontonagon County, but the district court admitted the testimony despite expressing reservations that the witness was "wandering pretty far afield." (App. at 103).
 
 
 [6]
 Since diversity of citizenship provides the jurisdictional base for this action, Michigan law controls the substantive issues raised by the parties. See, e.g., Davis v. Sears, Roebuck and Co., 873 F.2d 888, 892 (6th Cir.1989) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). The Erie doctrine, however, "does not affect the federal courts' application of the Federal Rules of Evidence[,]" including the definition of relevant evidence. Richardson by Richardson v. Richardson-Merrell, Inc., 857 F.2d 823, 825 n. 9 (D.C.Cir.1988). Insofar as admissibility of evidence is concerned in a "temporary taking" case such as this, there is no difference between Michigan and federal law. Although Michigan law may permit recovery of consequential damages, see, e.g., In re Grand Haven Highway, 357 Mich. 20, 26 (1959), which are not directly available under federal substantive law, see United States v. General Motors Corp., 323 U.S. at 382; United States v. 1735 North Lynn Street, 676 F.Supp. 693, 701 (E.D.Va.1987), federal law permits the introduction of such evidence to the extent that it has some bearing upon the market rental rate of the property subject to a temporary taking. See General Motors, 323 U.S. at 380-81. Accordingly, we shall refer to Michigan and federal law interchangeably in discussing the propriety of introducing negative effects evidence
 
 
 [7]
 The "just compensation" requirement in the fifth amendment's "takings" clause "applies against the States through the Fourteenth Amendment." Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980)