ARCHER, Senior Circuit Judge.
The United States (government) appeals the judgment of the United States Court of Federal Claims holding the government liable and assessing just compensation for a permanent regulatory taking of plaintiffs’ (collectively Bass) rights under a lease to drill and remove gas and oil deposits, see Bass Enter. Prod. Co. v. United States, 35 Fed. Cl. 615 (1996); Bass Enter. Prod. Co. v. United States, No. 95-52 L (Fed.Cl. June 20, 1996). Because the government has not at this time permanently taken Bass’ property interests but may have temporarily taken such rights, we reverse and remand.
BACKGROUND
In response to the growing public concern regarding the accumulating nuclear waste in the United States, the government pursued the creation of a permanent storage site for such waste. Selecting a location in Carlsbad, New Mexico, the government in 1977 condemned certain land and the subsurface to a depth of 6000 feet below the selected land in order to build, and to protect the integrity of, the Waste Isolation Pilot Plant (WIPP). In 1992, Congress passed the WIPP Land Withdrawal Act (LWA) to dedicate the condemned land for use in the project and to establish regulatory requirements that the Department of Energy must meet before waste can be deposited in the facility. See LWA, Pub.L. No. 102-579, 106 Stat. 4777 (1992).
The LWA, inter alia, prohibits all drilling through and underneath the site from outside of the condemned land. The Act exempts existing rights under two federal oil and gas leases[1] unless the Environmental Protection Agency (EPA) determines that such pre-existing rights need to be acquired in order to comply with final disposal regulations. Athough the EPA is statutorily required to make this determination, it has yet to do so.[2]
Bass holds one of the two exempted leases that underlie the property condemned in 1977. Bass submitted eight applications for permits to drill in April 1993. On August 22, 1994, the Bureau of Land Management (BLM), which is in charge of overseeing the lease, denied the permits “at this time.” The letter noted that BLM’s decision was based on EPA’s present inability to assess whether acquisition of the lease would be required. The decision was considered to be final, which permitted Bass to appeal to the Interi- or Board of Land Appeals.
Instead of appealing to the Interior Board of Land Appeals, however, Bass sued in the Court of Federal Claims alleging that the denial of the permits effected a permanent taking of portions of its lease. Ater Bass filed suit, BLM issued a supplemental decision on August 9,1995, noting that BLM was *895 willing to reconsider the drilling permits after EPA had rendered its decision. This supplemental decision also stated that, although the prior denial had been final for the purposes of appeal, it was actually a decision to delay a final determination. Nonetheless, Bass continued to pursue its claim in court.
At trial, the Court of Federal Claims held that the government had permanently taken Bass’ property interest in the lease and assessed $8,938,736 plus interest as just compensation. The court explicitly refused to consider a temporary taking theory because in its view such “analysis requires an end to the government regulation in order to measure the taking.” Bass, 35 Fed. Cl. at 617 n. 2 (citing Dufau v. United States, 22 Cl.Ct. 156 (1990) and 1902 Atlantic Ltd. v. United States, 26 Cl.Ct. 575 (1992)).
DISCUSSION
On appeal from the Court of Federal Claims, we review questions of law de novo and questions of fact for clear error. See Columbia Gas Sys., Inc. v. United States, 70 F.3d 1244, 1246 (Fed.Cir.1995). Whether a taking compensable under the Fifth Amendment has occurred is a question of law based on factual underpinnings. See Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (establishing legal criteria to guide the “essentially ad hoc, factual inquiries”); see also Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030-31, 112 S.Ct. 2886, 2901-02, 120 L.Ed.2d 798 (1992); Branch v. United States, 69 F.3d 1571, 1579, 1583 (Fed. Cir.1995). Whether a taking is permanent is a question of law. See Yuba Natural Resources, Inc. v. United States, 821 F.2d 638, 640 (Fed.Cir.1987).
Government regulation will effect a taking under the Fifth Amendment “where regulation denies all economically beneficial or productive use” of one’s property. See Lucas, 505 U.S. at 1015, 112 S.Ct. at 2893 (1992). The proper measure of just compensation is that which will put the owner “in as good a position pecuniarily as he would have occupied if his property had not been taken.” Yuba, 821 F.2d at 640 (quoting United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279-80, 87 L.Ed. 336 (1943)). The just compensation for a permanent taking is generally the fair market value of the property taken, whereas the recovery for a temporary taking is generally the rental value of the property. See id. at 641.
The government only contests the trial court’s determination that its actions constituted a permanent taking. The government argues that, instead, the government’s steps in evaluating Bass’ lease constitute at most a temporary taking because, at some definite point in the near future, the government will make a determination of whether to condemn Bass’ lease. Moreover, the government urges that any alleged taking is not permanent because Congress has established the procedures through which Bass’ lease will be condemned. It argues that a court decision at this time that the lease has been permanently taken would improperly remove that determination from the agency Congress selected to make this determination. Finally, the government argues that the Court of Federal Claims erred by using a bright-line test requiring the end of regulation and for this reason refusing to receive evidence regarding a temporary taking theory. Such a bright-line rule in the government’s view is not supported by precedent.
Bass responds that, under the terms of the LWA, the existing oil and gas drilling rights in the excepted leases “shall not be affected.” Thus Bass argues that BLM should have permitted Bass to drill and that the denial resulted in a taking of its rights. In Bass’ view, this taking is permanent because the date at which the regulation will end is unknown and at best speculative. Bass argues that the denial of the permits was just that— a denial — and not a “regulatory delay,” as characterized by BLM’s supplemental decision. Moreover, Bass contends that there is no guarantee that its drilling permits will ever be granted, even after the EPA renders its decision.
We conclude that any taking involved here is not a permanent taking. Congress has expressly established a mechanism for condemning the leases at issue if deemed necessary to ensure the integrity of the WIPP *896 facility. Such events are statutorily mandated to occur. Thus, in the interim, the denial of the permits is at best a temporary taking. The statutorily mandated end to the regulatory process will result in a decision whether or not to condemn the leases. Although the precise date is unknown, it is clear that such a decision is required to be made. Thus, we conclude that the denial of the drilling permits at this time does not constitute a permanent taking.
As noted, the Court of Federal Claims declined to hear evidence on a temporary taking theory. Because such a theory was not litigated and decided by the trial court, we will not at this time decide whether the government’s activities can be held to be a temporary taking. Instead, we remand the case to the trial court for further proceedings.
In this connection, we note that the Court of Federal Claims erred in declining to consider the temporary taking issue. The court cited its prior decisions in Dufau v. United States, 22 Cl.Ch 156 (1990), and 1902 Atlantic Ltd. v. United States, 26 Cl.Ct. 575 (1992), and ruled that the government’s regulation had to be concluded. While cessation of regulation may be sufficient for finding a temporary taking, nothing in these cases supports the proposition that the end of regulation is necessary. The Supreme Court has actually suggested .to the contrary: “It would require a considerable extension of these decisions to say that no compensable regulatory taking may occur until a challenged ordinance has ultimately been held invalid.” First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 320, 107 S.Ct. 2378, 2388-89, 96 L.Ed.2d 250 (1987); see also Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1073 n. 4 (11th Cir.1996) (noting that Supreme Court found a temporary taking even though “the ordinance in First English by its terms was indefinite; it would expire only if declared unconstitutional or repealed.”). “[TJempo-rary reversible takings should be analyzed in the same constitutional framework applied to permanent irreversible takings....” Yuba, 821 F.2d at 638; see also First English, 482 U.S. at 318, 107 S.Ct. at 2387-88 (“These cases reflect the fact that ‘temporary’ takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation.”). None of the eases relied upon by Bass conclude that the cessation of regulation is a necessary condition to liability. Indeed, “the distinction between ‘permanent’ and ‘temporary’ takings refers to the nature of the intrusion and not its temporal duration.” Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1582 (Fed.Cir.1993).[3]
The fact that regulation has not ceased may complicate a determination of just compensation but does not justify a bright-line rule against liability. See Hendler v. United States, 952 F.2d 1364, 1375 (Fed.Cir.1991) (“[T]he government’s appropriation of the unexpired term of a warehouse lease was a taking; the fact that it was finite went to the determination of compensation rather than to the question of whether a taking had occurred.”); see also Skip Kirchdorfer, 6 F.3d at 1583 (“The limited duration of this taking is relevant to the issue of what compensation is just, and not to the issue of whether a taking has occurred.”). Where an ultimate determination regarding Bass’ lease is mandated by statute, the termination of the regulation process here is not as speculative as in other regulatory settings. Accordingly, the determination of just compensation is determinable even though it may not be precise but falls only within a reasonable range.
CONCLUSION
We conclude that the government’s action in this case did not constitute a permanent taking of Bass’ property rights under its lease. Accordingly, the judgment of the Court of Federal Claims is reversed, and the case is remanded with instructions to the trial judge to allow the government and Bass to present additional evidence on the issue of whether the government has effected a tem *897 porary taking of Bass’ lease and, on the basis of this additional evidence and the existing record, to make a redetermination of the amount, if any, Bass is entitled to recover.

REVERSED AND REMANDED.

. The rights under these leases are limited to drilling below the 6000 feet of subsurface that had previously been condemned by the government.

. According to the government, there are two prerequisites to placing waste in the WIPP facility: EPA must both certify that the facility will comply with nuclear waste disposal regulations and also determine the fate of Bass’ lease. EPA has issued the compliance criteria for the Department of Energy, which submitted its application for certification on October 29, 1996. Under the LWA, EPA has one year to complete that evaluation. The government asserts that the decision regarding Bass’ lease should be determined around the same time as the EPA’s certification decision. The government concedes, however, that no definite date can be stated as to when the decision on Bass’ lease will be made. On October 30, 1997, the EPA issued proposed rules that conclude that acquisition of the lease at issue by the Department of Energy is not necessary. See 62 Fed.Reg. 58792, 58836 (to be codified at 40 C.F.R. pt. 194) (proposed October 30, 1997).

. Creppel v. United States, 41 F.3d 627, 632 (Fed. Cir.1994), which is cited by Bass, is inapposite because there the government regulation had already ceased, leaving only the issue of when the statute of limitations began to run.